**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: 415-373-1671
Email: aapton@zlk.com

*Attorneys for Plaintiff Aizaz Siddiqui
and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AIZAZ SIDDIQUI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GREG W. BECKER and DANIEL J. BECK,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>Demand for Jury Trial</u> |

Plaintiff Aizaz Siddiqui ("Plaintiff"), by and through undersigned counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, the investigation made by and through Plaintiff's attorneys, which includes without limitation: (a) review and analysis of regulatory filings made by SVB Financial Group ("SVB") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SVB; and (c) review of other publicly available information concerning SVB.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE CLAIM**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired securities of SVB between December

7, 2022 and March 8, 2023, inclusive (the "Class Period"), and were damaged thereby (the "Class"). Plaintiff alleges that defendants Greg W. Becker and Daniel J. Beck (collectively, "Defendants") violated the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, *et seq.* Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

2. SVB offers commercial and private banking products and services through its principal subsidiary, Silicon Valley Bank. Silicon Valley Bank was one of Silicon Valley's leading financial institutions for venture capital funds. During the Class Period, Defendants materially misrepresented and/or concealed that Silicon Valley Bank was facing a severe liquidity crisis resulting from declining customer deposits and increasing customer cash burn rates.

3. On March 8, 2023, after making numerous statements assuring investors that its liquidity was stable and secure, SVB announced that Silicon Valley Bank had incurred a massive $1.8 billion loss in connection with the sale of "substantially all of its available for sale securities portfolio." SVB further announced that it would be conducting a capital raise of nearly $2 billion to account for the loss.

4. SVB's stock price plummeted in response to the revelation. From a market close price of $267.83 per share on March 8, 2023, SVB's stock price fell to $106.04 per share on March 9, 2023 on extremely heavy volume. On March 10, 2023, market regulators halted trading of SVB stock. Silicon Valley Bank is presently under the control of the California Department of Financial Protection and Innovation and the Federal Deposit Insurance Corporation.

5. Investors in SVB have suffered significant losses. This action seeks to compensate those investors and recover the damages they sustained as a result of Defendants' fraudulent conduct.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act, 15 U.S.C. §78aa.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

9. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10. Plaintiff Aizaz Siddiqui purchased SVB securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in SVB is attached hereto.

11. SVB is a Delaware corporation with its principal executive offices located at 3003 Tasman Drive, Santa Clara, California 95054. During the Class Period, SVB's securities traded in an efficient market on Nasdaq Market ("NASDAQ") under the symbol "SIVB" and "SIVBP". SVB is not a defendant in this action given that it has filed for protection under Chapter 11 of the U.S. Bankruptcy Code.

12. Defendant Greg W. Becker ("Becker") is SVB's CEO and President.

13. Defendant Daniel J. Beck ("Beck") is SVB's CFO.

14. Defendants Becker and Beck are collectively referred to herein as the "Individual Defendants."

15. Each of the Individual Defendants:
   (a) directly participated in the management of SVB and Silicon Valley Bank;
   (b) was directly involved in the day-to-day operations of SVB and Silicon Valley Bank at the highest levels;
   (c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged

herein;

(d) was directly or indirectly involved in the oversight or implementation of SVB and Silicon Valley Bank's internal controls;

(e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning SVB and Silicon Valley Bank; and/or

(f) approved or ratified these statements in violation of the federal securities laws.

16. Because of the Individual Defendants' positions within SVB, they had access to undisclosed information about Silicon Valley Bank's liquidity via access to internal corporate documents (including SVB and Silicon Valley Bank's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

17. As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to Silicon Valley Bank's liquidity, including SVB's present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of SVB's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18. The Individual Defendants, because of their positions with SVB, possessed the power and authority to control the contents of SVB's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of SVB's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public

information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19. Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of SVB's securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public concerning Silicon Valley Bank's liquidity. This scheme caused Plaintiff and other shareholders to purchase SVB's securities at artificially inflated prices.

## FACTUAL BACKGROUND

20. SVB is a financial services company and bank holding company. It was incorporated in Delaware in March 1999. One of its primary functions is to provide banking services to entrepreneurs in the technology, life science/healthcare, private equity/venture capital industries.

21. SVB offers its commercial and private banking products and services through its principal subsidiary, Silicon Valley Bank. In 2022, Silicon Valley Bank accounted for 84% of SVB's revenues. Silicon Valley Bank primarily provides banking services to clients in the healthcare and technology industries, including private equity and venture capital firms.

22. In 2022, Silicon Valley Bank experienced a decrease in deposits primarily driven by a slowdown in public and private fundraising and exits as well as increased client cash burn rates. However, in late-2022 and/or early-2023, Defendants represented that deposit rates were returning to normal levels and that the bank's liquidity was not at risk. These statements were false and/or materially misleading.

23. On March 8, 2023, SVB announced a massive loss arising from its sale of nearly all of its for-sale securities portfolio, which consisted of approximately $21 billion. As a result, SVB stated it would be raising nearly $2 billion in new capital to offset the $1.8 billion loss it had incurred.

24. In response to the announcement, SVB's stock price plummeted as investors and analysts reevaluated Silicon Valley Bank's liquidity risk. In the span of just a day, SVB's stock price declined by more than 50%, eliminating nearly $9.5 billion in market capitalization. Silicon Valley Bank is presently under the control of the California Department of Financial Protection and Innovation and the Federal Deposit Insurance Corporation due to inadequate liquidity and insolvency danger.

## SUBSTANTIVE ALLEGATIONS

### A. False and/or Materially Misleading Statements

25. Defendants misrepresented SVB and Silicon Valley Bank's financial health and operations by making false and/or materially misleading statements about the bank's liquidity, deposits, and customer cash burn rates. These statements concealed from investors an impending liquidity crisis which, in turn, artificially inflated the price of SVB's securities.

*December 7, 2022*

26. On December 7, 2022, SVB participated in the Goldman Sachs U.S. Financial Services Conference. In pertinent part, Beck represented the following in response to analyst questions about "balance sheet stability":

> Ryan Matthew Nash Goldman Sachs Group, Inc., Research Division – MD
>
> I'm a relatively simple guy, so I appreciate the one slide update, not a lot to have to parse through. But you made the comment about seeing more balance sheet stability. Can we maybe just spend a minute on the update in terms of what you're seeing on the deposit side. I think the high end of the NII range came down a little bit to margin, came down a couple of basis points. Can you maybe just unpack what you're seeing within the fourth quarter? And what led to some of these puts and takes in terms of the changes?
>
> Daniel J. Beck SVB Financial Group – CFO
>
> Yes. We talked about it. ***The most important thing for us was looking at what was happening from a cash burn perspective, and that has started to slow within the quarter***. So we exited Q3 with $176 billion worth of deposits and on average are in [$174.5 billion] range for the quarter and pretty close to that for the period end as of the end of November. ***And again, underpinning that is slower cash burn by clients, even in this environment where deployment in venture is down roughly 10%***. So obviously, there's still a lot of time between here and the year-end, and our deposits do move pretty fast. ***But that stability and that level of cash burn clearly***

> *encouraging to us and consistent with what we would start to expect in an environment where folks are anticipating prolonged slow access to funding*.

(emphasis added)

### January 19, 2023

27.     On January 19, 2023, SVB held an investor conference call to discuss 4Q22 earnings. While discussing deposits and cash burn rates during the conference call, Becker stated in pertinent part:

> Now the markets are still challenging. We admit that. And they're likely to remain so throughout 2023. *We don't expect any dramatic change from where we are right now*. And in fact, even a little bit more pressure in the first couple of quarters. So in other words, again, not expecting a dramatic improvement. Global market volatility has significantly reduced private and public investment. In public, there's almost -- it is the longest time the window has been effectively shut. And we don't really expect that to change until maybe, but a big maybe in the latter half of the year. And there's still a lot of uncertainty over the direction of rates and inflation in the broader economy, and we hear about it pretty much every day in the news and on media.
>
> So what does it mean for us for '23? We expect these conditions will continue to put pressure on our growth in the first half of '23 with net interest income pressure, somewhat higher provision, although we still expect credit performance will remain good overall, and other headwinds that are kind of -- come on a daily basis. But in the second half, we expect continued momentum and the balance between venture investment and cash burn. And it doesn't -- this is important, and it doesn't take much of improvement, in fact, no real improvement from where we are on the deployment of dollars. *It's more about the cash burn, which we, again, continue to believe is going to be pulled back*.
>
> We expect the shift towards interest-bearing deposits to stabilize and could see an inflection point in net interest income and NIM in the second half of the year. We believe that shift, combined with progressive paydowns in our investment securities portfolio, again, roughly $3 billion a quarter, will provide meaningful revenue tailwinds that build throughout the year.
>
> And we have enough visibility at this point to provide full year 2023 outlook despite the market uncertainty, and those details are in our Q4 -- our Q4 '22 earnings deck filed earlier today.
>
> We're prepared if those things don't improve, again, which is important. And even if the market challenges are prolonged or get worse, it's important to note we have a high-quality, very liquid balance sheet, which I know there'll be lots of questions about; strong capital levels; a seasoned management team, which we experienced navigating challenging markets; and adding a lot of new people with deep experience as well; and a consistent focus on our long-term business strategy.

(emphasis added)

28. Beck also discussed deposits during the call. In pertinent part, he stated:

Casey Haire Jefferies LLC, Research Division – VP & Equity Analyst

Very good. And then in the letter, you guys talk about, you don't need to see VC deployment return to 2021 levels, which were obviously very strong. Can you just provide some color as to why that is? Because that comes up a lot because that was such obviously a monster year for deposits. And it's obviously flowing out now. And so it makes sense, the pushback that it's going to be very hard to replace what was a banner year.

Daniel J. Beck SVB Financial Group – CFO

Yes, Casey, I'll just go to the results of the fourth quarter as an indicator of why that statement makes sense. We're looking at venture deployment in the quarter $35 billion or so. So think of that as kind of an annualized run rate, $120 billion to $140 billion of venture deployment in the quarter from a balance sheet perspective on balance sheet. ***While we did see a decline in deposits, it was much lower than what we saw in the third quarter. And the reason for that gets to what Greg mentioned as well as Mike, where we're seeing that lower level of cash burn***.

So even on a much slower venture deployment number, call it in the mid-$30 billion range, ***we started to see that on balance sheet deposit when we look at cash burn versus the inflows get to a much more normalized level. So that, I think, is an indicator with cash burn continuing to slow based on what Mike and Greg just said, that we can get back without going to the 2021 deployment levels, to not just the deposits being at the same level, but the potential for deposit growth***.

(emphasis added)

<u>February 14, 2023</u>

29. On February 14, 2023, SVB participated in the Bank of America U.S. Financials Conference. In response to analyst questions about deposits, Beck stated in pertinent part that:

Ebrahim Huseini Poonawala BofA Securities, Research Division – MD of United States Equity Research & Head of North American Banks Research Understood.

And then just given the visibility you have in terms of customers or cash flows, going back to sort of the cash burn and what that may mean for deposits. How great is your sort of line of sight around the need for the next round of funding at some point this year? And that could lead to sort of a pickup in just core deposit growth.

Daniel J. Beck SVB Financial Group – CFO

Yes. I think that varies pretty widely because there's a vast universe of different types of companies with different types of burn rates but I think what we see is on the

main, that companies certainly have going into this recalibration, more cash than they've had during previous cycles. But again, with every passing quarter, a lot of these companies get to the spot where a new fundraising round might make sense for them. And that, again, I think with every passing quarter is what we expect. Now think about our guidance, and we talked about this on the Q4 call, we aren't anticipating into the back half of the year, a big hockey stick recovery in terms of the amount of deployment. In fact, it's pretty uncertain when that's going to happen. And if you think of the dollars of venture deployment that we're expecting in the year, you're pretty much looking at almost Q4 run rate annualized in the year. ***And then with that, we certainly see overall, a bounce back here in the second half off of a slower cash burn in the second half of the year***.

. . .

Ebrahim Huseini Poonawala BofA Securities, Research Division – MD of United States Equity Research & Head of North American Banks Research

Got it. And in terms of just managing those balance sheet, on balance sheet versus off, should we expect you to do things differently going forward in the past in terms of -- thought about that liquidity?

Daniel J. Beck SVB Financial Group – CFO

No. It depends -- all is going to depend on the rate environment. And I think we've got a lot of options as deployment starts to pick up off of the backs of and again, as a reminder to everyone, we don't need to see 2020, 2021 levels of venture deployment to actually see net growth in overall deposits. So as soon as you start to see venture deployment pick up, off of the backs of slower cash burn, that can lead, obviously, to net incremental deposits. And then from there, there are a lot of interesting options in terms of, do I want to move some of those more expensive deposits in our toggle product back off the balance sheet. So that will reduce interest expense pressure there. I can effectively use some of that net liquidity to pay down borrowings or think about investing some of that, taking advantage of some of the rates that we're seeing from an investment securities perspective. So that's -- those options are all available to us as we start to head after what could be a bumpy at least the first couple of quarters, to the back half of this year.

Ebrahim Huseini Poonawala BofA Securities, Research Division – MD of United States Equity Research & Head of North American Banks Research

I guess, maybe in a world where the forward curve doesn't play out and we don't get rate cuts, or maybe get a hike later in the year. I mean -- just give us a sense of like the downside risk in terms of when you think about your guidance and what might happen if the Fed needs to be at 5.5% for the next 2 years or move to 6%, what does that mean?

Daniel J. Beck SVB Financial Group – CFO

> Yes. I mean I think the most important thing, again, is at that rate, did the Fed effectively tame inflation. And if the Fed is able to do that and you get to some point of stability in the market, that's when venture deployment can start to pick up again. ***And as every quarter passes, the need for companies to actually have that cash liquidity and deployment, I think, is going to pick up. So I think that's, again, the one most important thing to pay attention to. If the Fed has to keep going here, that -- I think we're going to see more of what we've seen here over the last couple of quarters, clients continuing to try to slow cash burn, clients that are going to continue to take reductions in the form of people, in the form of real estate and at the same time, lower and weaker levels of deployment. What that means for us is, I think more of that balance from a cash burn perspective, similar to what we saw in the fourth quarter. So no growth but more balanced from a deposit perspective***.

(emphasis added)

<u>February 24, 2023</u>

30. On February 24, 2023, SVB filed its annual report for fiscal 2022 on Form 10-K with the SEC. In the annual report, SVB stated in pertinent part that:

> . . . The primary source of funding for the Bank is client deposits, a majority of which are maintained in cash and highly liquid assets. ***Our deposit growth has slowed in the latter half of 2022 from the rapid growth seen in the 18 months prior, and a reduced level of deposits may affect our liquidity***. Decreases in the amount of equity capital available to early-stage and mid-stage companies, including through a decrease in M&A activity or public equity activity, may further slow deposit growth, as we derive a meaningful share of our deposits from these companies. ***Reductions to our level of deposits may place more pressure on finding supplemental sources of liquidity***.
>
> . . .
>
> Our client deposits base is, and historically has been, our primary source of liquidity funding. ***Our deposit levels and cost of deposits may fluctuate from time to time due to a variety of factors, including market conditions, prevailing interest rates, changes in client deposit behaviors, availability of insurance protection and our offering of deposit products***. We may also offer more investment alternatives for our off-balance sheet products which may impact deposit levels. At December 31, 2022, our period-end total deposit balances decreased to $173.1 billion, compared to $189.2 billion at December 31, 2021.

(emphasis added)

\*   \*   \*

31. The foregoing statements were false and/or materially misleading because they misrepresented SVB and Silicon Valley Bank's liquidity and need for capital due to slowing deposits and increased customer cash burn rates. As a result, Defendants materially overstated

Silicon Valley Bank's financial strength and operations, including present and future expectations for the bank's earnings and growth.

### B. The Truth Emerges

<u>March 8, 2023</u>

32. On March 8, 2023, after market hours, SVB issued a press release titled "SVB Financial Group Announces Proposed Offerings of Common Stock and Mandatory Convertible Preferred Stock." The press release revealed that Silicon Valley Bank was facing a severe liquidity crisis that had required the sale of "substantially all of its available for sale securities portfolio" which, in turn, had caused the bank to incur a $1.8 billion loss. As a result, SVB announced it would be conducting a capital raise of nearly $2 billion.

33. In pertinent part, the press release stated as follows:

> SANTA CLARA, Calif., March 8, 2023—SVB Financial Group ("SVB") (NASDAQ: SIVB), announced today that it intends to offer $1.25 billion of its common stock and $500 million of depositary shares, consisting of 10 million depositary shares each representing a 1/20th interest in a share of its Series F Mandatory Convertible Preferred Stock ("Preferred Stock"), liquidation preference $1,000 per share (equivalent to a liquidation preference of $50 per depositary share), in separate underwritten registered public offerings. In addition, prior to commencing the offerings, SVB entered into a subscription agreement with General Atlantic, a leading global growth equity investor, to purchase $500 million of common stock at the public offering price in the offering of common stock in a separate private transaction. The subscription agreement with General Atlantic is contingent on the closing the offering of common stock and is expected to close shortly thereafter. SVB also intends to grant (i) the underwriters in the common stock offering an option to purchase up to an additional $187.5 million of common stock and (ii) the underwriters in the Preferred Stock offering an over-allotment option to purchase up to an additional $75 million, or 1.5 million depositary shares in the Preferred Stock offering. SVB intends to use the net proceeds from the offerings for general corporate purposes. The consummation of each offering is not contingent upon the consummation of the other offering.
>
> ***Additionally, earlier today, SVB completed the sale of substantially all of its available for sale securities portfolio. SVB sold approximately $21 billion of securities, which will result in an after tax loss of approximately $1.8 billion in the first quarter of 2023***.

(emphasis added)

34. SVB's stock price immediately declined in response to the disclosure. From a market close price of $267.83 per share on March 8, 2023, SVB's stock price fell to $106.04 per share on March 9, 2023 on extremely heavy volume. On March 10, 2023, market regulators halted trading of SVB stock.

### C. Loss Causation And Economic Loss

35. Defendants' materially misleading statements and omissions during the Class Period resulted in Plaintiff and other Class members purchasing SVB's shares at artificially inflated prices, and thereby directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other Class members.

36. As alleged herein:

   a. the market for SVB's stock was open, well-developed and efficient at all relevant times;

   b. Defendants' above-detailed materially misleading statements and/or material omissions had the effect of creating in the market an unrealistically positive assessment of SVB and the financial health of Silicon Valley Bank, thus causing SVB's shares to be overvalued and the market price of the SVB's shares to be artificially inflated during the Class Period;

   c. Defendants created an unrealistically positive assessment of SVB and its prospects by, in part, concealing risks associated with exposure arising from Silicon Valley Bank's liquidity;

   d. Plaintiff and other Class members purchased or otherwise acquired SVB stock relying upon the integrity of the market price for SVB shares and market information relating to SVB;

   e. The risks associated with exposure arising from Silicon Valley Bank's liquidity began to materialize and, in turn, investors began to discover that Defendants' public statements were materially misleading; and

   f. Upon discovery of Defendants' materially misleading statements and/or material omissions, SVB's share price suffered severe devaluation.

37. Defendants withheld material information concerning Silicon Valley Bank's liquidity. Defendants' misleading statements and omissions concealed this information from the public and precluded investors from knowing that they were subjecting themselves to significant risks when investing in SVB, *i.e.*, risks associated with Silicon Valley Bank's liquidity.

### D. Presumption Of Reliance; Fraud-On-The-Market

38. At all relevant times, the market for SVB's securities was an efficient market for the following reasons, among others:

    (a) SVB shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

    (b) During the Class Period, SVB securities were actively traded, demonstrating a strong presumption of an efficient market;

    (c) As a regulated issuer, SVB filed with the SEC periodic public reports during the Class Period;

    (d) SVB regularly communicated with public investors via established market communication mechanisms;

    (e) SVB was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

    (f) Unexpected material news about SVB was rapidly reflected in and incorporated into SVB's stock price during the Class Period.

39. As a result of the foregoing, the market for SVB's securities promptly digested current information regarding SVB from all publicly available sources and reflected such information in SVB's stock price. Under these circumstances, all purchasers of SVB securities during the Class Period suffered similar injury through their purchase of SVB securities at artificially inflated prices, and a presumption of reliance applies.

40. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant

to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered Silicon Valley Bank's liquidity when deciding whether to purchase and/or sell SVB securities.

### E. No Safe Harbor; Inapplicability Of Bespeaks Caution Doctrine

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

42. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

43. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of SVB who knew that the "forward-looking statement" was false. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

### CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of all individuals and entities who purchased acquired SVB securities on the public market during the Class Period, and were damaged, excluding SVB, the Individual Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest (the "Class").

45. The Class members are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of SVB common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown at this time and can be ascertained only

through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by SVB or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of January 31, 2023, SVB had 59,200,925 shares of common stock outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

46. Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

47. Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b) whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning Silicon Valley Bank's liquidity;

(c) whether the price of SVB's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d) whether the Class members have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

15
CLASS ACTION COMPLAINT

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other Class members to purchase SVB securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

52. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of SVB securities in an effort to maintain artificially high market prices for SVB securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Silicon Valley Bank's liquidity and thus the business and future prospects of SVB as specified herein.

54. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SVB's value, performance, and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make

the statements made about Silicon Valley Bank's liquidity in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of SVB securities during the Class Period.

55.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at SVB during the Class Period and members of SVB's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of SVB, was privy to and participated in the creation, development and reporting of SVB's SEC filings and public statements concerning Silicon Valley Bank; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of SVB's management team, internal reports and other data and information about Silicon Valley Bank, at all relevant times; and (4) each Individual Defendant was aware of SVB's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Silicon Valley Bank's liquidity from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' misrepresentations concerning Silicon Valley Bank's liquidity throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SVB securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of SVB

securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired SVB securities during the Class Period at artificially high prices and were or will be damaged thereby.

58. At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other Class members and the marketplace known the truth regarding Silicon Valley Bank's liquidity, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their SVB securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

59. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of SVB securities during the Class Period.

61. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II

### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of SVB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of SVB's operations and/or intimate knowledge of the false information filed by SVB with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and

control, and did influence and control, directly or indirectly, the decision-making of SVB, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of SVB's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of SVB and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

66. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection with their purchases of SVB's common stock during the Class Period.

67. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

Dated: March 17, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ *Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 9411
Tel: 415-373-1671
Email: aapton@zlk.com

*Attorneys for Plaintiff Aizaz Siddiqui*
*and Proposed Lead Counsel for the Class*